IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL PEARCE, CAROLE LIVINGSTONE, and ANNAMAY MANNY, | ) ) ) |
| Plaintiffs, | ) Civil Action No.: 08 C 4483 |
| v. | ) ) Suzanne B. Conlon, Judge |
| PATRICK M. THIRY, JOHNNY BROWN, KERRY POZULP, and CITY OF CHICAGO, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Michael Pearce, Carole Livingstone, and Annamay Manny sue Chicago police officers Patrick M. Thiry, Johnny Brown, Kerry Pozulp (collectively "police officers"), and the City of Chicago ("city") under 42 U.S.C. § 1983 (Counts I-V), and bring state law claims for intentional infliction of emotional distress (Count VI), false imprisonment (Counts VII-IX), and indemnification against the city (Count X). Pearce claims the police officers unlawfully detained, falsely arrested, and falsely imprisoned him for reckless conduct and perjury (Count I-II and VII-VIII). Livingstone and Manny claim the police officers unlawfully seized their property, and unlawfully detained, falsely arrested, and falsely imprisoned them when executing a search warrant at their house (Counts III, V, and IX). Plaintiffs collectively assert conspiracy (Count IV) and intentional infliction of emotional distress ("IIED") claims (Count VI) against the police officers. Defendants move for partial summary judgment. For the reasons set forth below, defendants' motion is granted in part.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. The movant must submit a statement of material facts, not to exceed 80 short numbered paragraphs; each paragraph must cite affidavits, parts of the record, and other supporting materials relied upon. Local Rule 56.1(a)(3). The opposing party must respond to each numbered paragraph in the movant's statement including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. Local Rule 56.1(b)(3). Failure to comply with this rule results in admission of the facts. Local Rule 56.1(b)(3)(C); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The opposing party may also submit a statement of supplemental material facts, not to exceed 40 short numbered paragraphs, that require summary judgment denial. Local Rule 56.1(b)(3)(C).

Rule 56.1 statements and responses must cite supporting evidence. *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (Castillo, J.). In violation of the rule, the parties repeatedly rely on nonresponsive evidence and improper factual and legal characterizations to support their statements and responses. The court considers the parties' submissions only to the extent they comply with Rule 56.1's requirements. Plaintiffs repeatedly fail to attach cited pages of deposition transcripts. The court considers the evidence to the extent the pages are included in defendants' exhibits.

## II. Background

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. On August 7, 2007, the police officers were patrolling 63rd Street area when an unidentified individual reported that a white male between 17 and 19 years old, wearing a baby blue t-shirt, was flashing gang signs at pedestrians to the east on 64th Street. Defs. Ex. F and Pls. Ex. C: Thiry Dep. Tr. at 18-20. According to Thiry, the police officers drove to the area and observed Pearce flashing gang signs. Thiry Dep. Tr. at 20. Pozulp testified he could not hear the informant's report, and that they drove to the intersection of 64th and Major Streets where Pearce was yelling and "moving his hands and arms up." Defs. Ex. G and Pls. Ex. I: Pozulp Dep. Tr. at 25-28. Brown testified the informant reported "[t]wo mf-ers around the corner are f-ing with people." Pls. Ex. D: Brown Dep. Tr. at 28.

Notwithstanding the testimony, the police officers admit Pearce was *not* flashing gang signs when they first encountered him. Pl. Facts ¶ 2; Defs. Resp. ¶ 2. Pearce denies flashing gang signs, and testified he was with friends walking toward the park to play basketball when he encountered the police officers. Pls. Exs. A and B; Defs. Exs. E and J: Pearce Dep. Tr. at 27, 29-30. The police officers arrested Pearce for reckless conduct. Defs. Facts ¶ 6.

The police officers drove Pearce to the police station; Pearce was told he would go to jail unless he "gave them a name before they got to the station." Pls. Facts ¶ 5. At the time, a marijuana possession charge was pending against Pearce; the police officers told him an arrest would violate his bond. Defs. Facts ¶¶ 8-9; Pls. Resp. ¶¶ 8-9. Pearce identified an individual nicknamed "Hitman" as a marijuana source. Defs. Facts ¶ 11. Pearce was held in the gang tactical office in handcuffs until he identified Hitman (Rudy Cantu) in a photograph. Pls. Facts ¶

3

6. Pearce told the police officers he could provide the location on 78th Place where Cantu sold marijuana, but the parties dispute the location Pearce disclosed. According to Pearce, two police officers drove Pearce to 78th Place, and he identified a gangway between two houses as the location his friend Blue bought marijuana from Cantu in July 2007. Pls. Facts ¶ 8. But the police officers maintain Pearce identified 3844 West 78th Place as the house where Hitman sold marijuana. Defs. Facts ¶¶ 21-23. Pearce was returned to his jail cell and remained there overnight. Pls. Facts ¶ 11.

Thiry prepared a search warrant for 3829 West 84th Place – the wrong address even under the police officers' version of events. Defs. Facts ¶ 25; Defs. Ex. K. The complaint states "a cooperating individual" purchased marijuana from Cantu at 3829 West 84th Place on August 6, 2007 and approximately 30 other times during the preceding three months, and that Cantu lives at the address. Defs. Ex. K. The complaint states Thiry drove with the cooperating individual to 3829 West 84th Place. Defs. Ex. K.

On the afternoon of August 8, 2007, the day after his arrest, while Pearce was still in custody, Thiry, Pozulp, and Pearce appeared before Cook County Judge Adam Bourgeois to obtain approval for the warrant. Defs. Facts ¶ 26. Pearce was sworn and attested to the accuracy of the information in the search warrant. Defs. Facts ¶¶ 27-28; Pls. Facts ¶ 13; Pearce Dep. Tr. at 10, 13-14. It is undisputed Pearce signed the search warrant as John Doe, but he had not read the search warrant. Pls. Facts ¶ 13; Defs. Resp. ¶ 13. The police officers do not dispute they told Pearce "you know what they do to skinny white boys like you in the Cook County jail, and, you know, you better sign this paper if you want to go home." Defs. Facts ¶ 17. They do not dispute Pozulp told Pearce not to ask questions and "just sign the paper" if he wanted to go home and see

4

his grandmother. Pls. Facts ¶ 12. Judge Bourgeois approved the search warrant; and Pearce was returned to his jail cell. Defs. Facts ¶ 29.

Later that afternoon, Thiry, Pozulp, and Pearce appeared before Cook County Judge William O'Malley at the judge's doctor's office to obtain approval for an amended warrant for 3844 West 78th Place – the address Pearce purportedly identified. The substance of the search warrant was not revised. Defs. Facts ¶ 33; Defs. Ex. M. Pearce was sworn and attested to the accuracy of the information in the search warrant. Defs. Facts ¶¶ 34-35. It is undisputed that Thiry told Pearce to sign the supporting affidavit if he wanted to go home. Pls. Facts. ¶ 20. Pearce testified Judge O'Malley did not read the contents of the complaint to him or question him. Pearce Dep. Tr. at 32. Judge O'Malley attests he showed Pearce the complaint, and Pearce affirmed the information was true and accurate. Defs. Ex. L: Judge O'Malley Aff. ¶ 5. In addition, Judge O'Malley attests he requested Pearce's verification regarding the address, Cantu's physical description, and Pearce's August 6, 2007 transaction with Cantu. Judge O'Malley Aff. ¶ 6. Judge O'Malley approved the search warrant, and Pearce was returned to his jail cell. Defs. Facts ¶¶ 39, 41.

That evening, on August 8, 2007, the search warrant was executed; Thiry was not on duty. Defs. Facts ¶¶ 42-43. Pozulp broke open the front door. Defs. Facts ¶ 45. Brown guarded the perimeter. Defs. Facts ¶ 44. According to Pozulp, he knocked on the front door twice, announced "Chicago Police," waited approximately 10 seconds, and heard what he believed to be someone running to hide before making the forced entry. Pozulp Dep. Tr. at 102-04. Livingstone heard loud shouting, and the door was immediately breached. Pls. Ex. F: Carole Livingstone Dep. Tr. at 25-26. Livingstone was in the living room; Manny (her mother) was in

5

her bedroom. Pls. Facts ¶ 26. Police officers conducted a security sweep, and directed Livingstone to secure her Rottweiler. Defs. Facts ¶¶ 47-49. Livingstone telephoned her son Douglas Livingstone – a Chicago detective, who arrived 15 to 20 minutes later. Defs. Facts ¶¶ 54-55. The police officers called off the search when the security sweep revealed Cantu was not there. Defs. Facts ¶¶ 51-52. The police officers searched the house for about two hours; Carole Livingstone did not feel free to leave her home. Defs. Ex. P and Pls. Ex. F: Carole Livingstone Dep. Tr. at 57, 148. Her son's baseball card and comic book collections were "rifled through" and "bent." Carole Livingstone Dep. Tr. at 84. A BB gun was out of its case. Defs. Ex. S and Pls. Ex. E: Detective Livingstone Dep. Tr. at 162. Carole Livingstone and Manny went to the hospital after the police officers left. Carole was treated for high blood pressure and a headache. Defs. Facts ¶ 63. Manny was treated for chest pain, and a CAT scan revealed a broken portacath piece in her chest. Defs. Facts ¶ 64. The piece was removed; the next day, Manny was reported to be in good health. Defs. Facts ¶¶ 64, 67. Manny's treating physician did not think the broken portacath could be caused from fright. Defs. Facts ¶ 65.

Pearce was charged with reckless conduct and released on bond on the morning of August 9, 2007. Pls. Facts ¶ 32. Pozulp threatened he would arrest Pearce if he saw him on the street again, pointed his gun at Pearce, and said he would shoot Pearce if they were not in the building. Pearce Dep. Tr. at 23-24. The next day, Sergeant Lee Bielecki (who was present at the search) met with Detective Livingstone at Bielecki's insistence; Bielecki gave him an envelope of money and a claim form for the front door. Detective Livingstone Dep. Tr. at 85, 91-93. Sergeant Bielecki stated the money was from the people involved in the search, and it was to take Livingstone's grandmother to dinner, and not to "not [ ] get a CR number." Detective

6

Livingstone Dep. Tr. at 93. Detective Livingstone refused the money. Detective Livingstone Dep. Tr. at 93-94. On August 23, 2007, Pearce was arrested and charged with perjury for his statements supporting the search warrant. The perjury charge remains pending in state court. Defs. Facts ¶¶ 70-76.

Approximately a year later, Thiry telephoned Pearce's attorney Denise Nalley in response to a subpoena. Thiry misunderstood Nalley was the state's attorney; Thiry referred to Pearce as "a piece of shit" and "liar," and stated "we're going to get him." Pls. Ex. H: Denise Nalley Dep. Tr. at 31-32, 63-64.[1]

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Defendants have the initial burden of demonstrating they are entitled to summary judgment. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at 323). If defendants meet their burden, plaintiffs must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to plaintiffs. *See Franzoni v. Hartmarx Corp.*, 300 F.3d

---

[1] The police officers argue Thiry's statement is inadmissible hearsay. The statement is not hearsay because it is an admission by party-opponent. F.R.E. 801(d)(2).

7

767, 771 (7th Cir. 2002). A genuine issue of material fact exists if the evidence is sufficient to support a reasonable jury verdict in plaintiffs' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**II. Pearce**

### A. Section 1983 Unlawful Detention and False Arrest and State Law False Imprisonment – Reckless Conduct (Counts I and VII)

The police officers argue they are entitled to summary judgment on the unlawful detention claims in Counts I (§ 1983 unlawful detention and false arrest – reckless conduct) and VII (false imprisonment – reckless conduct) because their initial investigatory stop of Pearce on August 7, 2007 was lawful under *Terry v. Ohio*, 392 U.S. 1 (1968). They do not move for summary judgment on the § 1983 false arrest and state law false imprisonment claims. There is no bright-line rule that separates a *Terry* stop from a formal arrest. *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995). It is undisputed that Pearce was arrested, not just stopped, for reckless conduct. The police officers fail to explain any distinction between the investigatory stop and Pearce's arrest for reckless conduct.

A police officer may conduct an investigative stop if he has reasonable suspicion, based on specific and articulable facts, that the individual stopped has or is about to commit a crime. *United States v. Booker*, ____ F.3d ____, No. 07-3094, 2009 WL 2633780, at *2 (7th Cir. Aug. 28, 2009). Reasonable suspicion is evaluated in light of the totality of the circumstances known to the police officer at the time. *United States v. Hicks*, 531 F.3d 555 (7th Cir. 2008).

The police officers contend they had reasonable suspicion to stop Pearce because he met the description of the person reportedly flashing gang signs in the nearby intersection. *Jewett v.*

8

*Anders*, 521 F.3d 818 (7th Cir. 2008); *Edwards v. Cabrera*, 58 F.3d 290 (7th Cir. 1995). In *Jewett*, police officers were investigating an attempted homicide, and were given the suspect's name (Andre Thompson), place of employment (Wal-Mart), age, height, and weight. While in the Wal-Mart parking lot, a police officer observed Jewett, who matched the description, peered out a Wal-Mart door, and then left through another door. When the police officer followed Jewett, he ran back toward Wal-Mart. Jewett was caught, handcuffed, questioned, and issued a citation for obstructing a police officer. Jewett's detention was found to be a permissible *Terry* stop based on the information known to the police officer and Jewett's conduct. *Jewett*, 521 F.3d at 825-26.

*Edwards* involved an arrest, not a *Terry* stop. A public bus dispatcher reported a tip from a bus driver that the driver thought he saw a drug transaction involving five black men at a specified station. When police officer Cabrera arrived, she saw four black men; the group disbanded. She followed one of the men (Edwards), and he accompanied Cabrera to a nearby bus that Edwards' brother Eugene had boarded. Eugene left the bus at Cabrera's request, and appeared to have urinated in his pants. Eugene consented to a search of his bag; marijuana was found. Edwards and Eugene were arrested; Edwards was later released without being charged. *Edwards*, 58 F.3d at 292. The court held there was probable cause to arrest Edwards based on the bus driver's tip, corroboration Cabrera gleaned at the scene, and the marijuana discovery. *Id.* at 294. Although the police did not know the informant's name, his status as a bus driver was known, and his identity was easily ascertainable. *Id.*

The information known to the police officers before stopping Pearce is disputed. At most, they received a tip from an unidentified informant, without any basis of ascertaining

9

reliability, a young male in a baby blue t-shirt was flashing gang signals nearby. Although their observations vary, the police officers admit Pearce was not flashing gang signs when they first encountered him. Pls. Facts ¶ 2; Defs. Resp. ¶ 2. Pearce denies flashing gang signs, and states he was walking to the park to play basketball with friends. Pearce Dep. Tr. at 27, 29-30. There was no corroboration for the unidentified informant's report. Viewing the evidence in the light most favorable to Pearce, and drawing all reasonable inferences in his favor, there are genuine issues of material fact whether there was reasonable suspicion to stop Pearce for a crime and when the stop became an arrest. Partial summary judgment is not warranted on Counts I (§ 1983 unlawful detention and false arrest – reckless conduct) and VII (false imprisonment – reckless conduct).

The police officers argue they are entitled to qualified immunity on the unlawful detention claims in Counts I and VII. Qualified immunity protects government officials performing discretionary functions from civil damages unless their conduct violates clearly established statutory or constitutional rights obvious to a reasonable person. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). The police officers contend Pearce's "claimed right to be free from a *Terry* stop based on a tip" is not clearly established. This is not Pearce's claim. Pearce argues the totality of the circumstances known to the police officers was insufficient to establish reasonable suspicion to stop, much less arrest him for reckless conduct.

Pearce had a clearly established right to be free from a *Terry* stop unless the police officers had reasonable suspicion to believe he committed a crime. *Jewett*, 521 F.3d at 823. There are genuine issues of material fact whether the police officers had reasonable suspicion to stop him. The record reveals no information about the identity or reliability of the informant.

10

The police officers' testimony conflicts regarding the tip and any corroborating information at the scene. Thiry Dep. Tr. at 18-20; Pozulp Dep. Tr. at 25-28; Brown Dep. Tr. at 28. Pearce denies flashing gang signs. Pearce Dep. Tr. at 27, 29-30. Summary judgment on qualified immunity grounds is not appropriate if there are genuine issues of material fact whether a constitutional violation occurred. *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1038 n.22 (7th Cir. 2003); *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir. 1987). The police officers are not entitled to summary judgment on qualified immunity grounds for the unlawful detention claims in Counts I (§ 1983 unlawful detention and false arrest – reckless conduct) and VII (false imprisonment – reckless conduct) because there are genuine issues of material fact regarding the police officers' reasonable suspicion to stop Pearce, much less to arrest him for reckless conduct.

### B.   Section 1983 Unlawful Detention and False Arrest and State Law False Imprisonment – Perjury (Counts II and VIII)

Pozulp and Brown contend they are entitled to summary judgment on Counts II (§ 1983 unlawful detention and false arrest – perjury) and VIII (false imprisonment – perjury) because they did not arrest Pearson for perjury; Thiry and another police officer did. Section 1983 liability requires personal involvement in the constitutional wrongdoing. *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). Pearce does not respond to Pozulp and Brown's argument. Failure to respond to a summary judgment argument may be deemed waiver. *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810 (7th Cir. 2001) (plaintiff waived claim by failing to argue it in opposition to defendant's summary judgment motion). *But see Nabosny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996) (district court must review uncontroverted facts and determine whether summary judgment is appropriate even if non-moving party fails to respond to summary

judgment motion). Pozulp and Brown attest they were not personally involved in Pearce's perjury arrest. Brown Dep. Tr. at 60; Defs. Ex. R: Pozulp Aff. ¶ 10. Pearce admits they did not participate in Pearce's perjury arrest. Defs. Facts ¶ 72; Pls. Resp. ¶ 72. The undisputed facts demonstrate Pozulp and Brown are entitled to summary judgment on Counts II and VIII.

Thiry argues he is entitled to summary judgment on Counts II (§ 1983 unlawful detention and false arrest – perjury) and VIII (false imprisonment – perjury) because he had probable cause to arrest Pearce for perjury. Probable cause is a complete defense to false arrest and imprisonment claims. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007); *Meerbrey v. Marshall Field & Co.*, 545 N.E.2d 952, 955 (Ill. 1989). Pearce attested in the search warrant application and before the court that he purchased marijuana from Cantu at Cantu's home on 3844 West 78th Place. Defs. Ex. M. The police officers' attempt to execute the search warrant demonstrated that Cantu did not live at 3844 West 78th Place, and there was no drug activity at the residence. An affiant to a search warrant may be charged with perjury if the alleged facts are not true. 720 ILCS 5/32-2; *People v. Bak*, 258 N.E.2d 341, 343 (Ill. 1970).

Pearce maintains he identified a gangway between two houses, not a specific house, as the location where Cantu sold drugs. Pls. Facts ¶ 8. Pearce's verification of the conflicting information in the search warrant before a judge is significant. Judge O'Malley Aff. ¶¶ 5-6. But Pearce disputes that Judge O'Malley reviewed the content of the search warrant with him. Pearce Dep. Tr. at 32. Pearce responds he was coerced into attesting to the search warrant's accuracy. It is undisputed Pearce was told to sign the search warrant affidavit if he wanted to go home (Pls. Facts ¶ 20); he was warned "you know what they do to skinny white boys like you in the Cook County Jail." Defs. Facts ¶ 17; Pls. Facts ¶ 12. Thiry characterizes these statements as

12

vague threats. *United States v. Mizyed*, 927 F.2d 979. (7th Cir. 1991). In *Mizyed*, FBI agents' threat that "'it would be better for you to talk to us[;] [o]therwise we will take you in'" was found unlikely to overbear the suspect's will, and did not provide a basis to suppress a confession. *Id.* at 980. The particularized threats to Pearce regarding physical harm in jail if he did not cooperate are distinct from the vague threat in *Mizyed* and directly impact the reliability of Pearce's attestation as a basis for the search warrant. Viewing the evidence in the light most favorable to Pearce, and drawing all reasonable inferences in his favor, there are genuine issues of material fact regarding the existence of probable cause to arrest Pearce for perjury. Thiry is not entitled to summary judgment on Counts II (§ 1983 unlawful detention and false arrest – perjury) and VIII (false imprisonment – perjury).

Thiry argues he is entitled to qualified immunity on Counts II and VIII because Pearce's right to be free from perjury arrest was not clearly established at the time of his arrest. Pearce had a clearly established right not to be arrested without probable cause. *Kelley v. Myler*, 149 F.3d 641, 648 (7th Cir. 1998). Thiry's qualified immunity claim begs the disputed material issues regarding the address Pearce identified as the location Cantu sold drugs, and whether Pearce was coerced into attesting to the search warrant's accuracy. Genuine issues of material fact regarding the existence of probable cause to arrest Pearce for perjury preclude summary judgment on Thiry's qualified immunity claim for Counts II (§ 1983 unlawful detention and false arrest – perjury) and VIII (false imprisonment – perjury).

### III. Livingstone and Manny

#### A. Section 1983 Unlawful Detention and False Arrest and State Law False Imprisonment (Counts III and IX)

Thiry and Brown argue they are entitled to summary judgment on the false arrest and imprisonment claims in Counts III (§ 1983 unlawful detention and false arrest) and IX (false imprisonment) because they were not personally involved in executing the search warrant. Livingstone and Manny do not respond. The argument is specious. Brown testified he guarded the house's perimeter while the warrant was executed. Defs. Facts ¶ 44. Thiry was off-duty at the time, but the record demonstrates he prepared the search warrant papers and appeared before the court to obtain the warrant. Defs. Facts ¶¶ 25-26, 33. Thiry and Brown's testimony demonstrates there are genuine issues of material fact regarding their personal involvement in the alleged deprivation of Livingstone and Manny's fourth amendment rights. *Grieveson*, 538 F.3d at 776.

The police officers argue there is no evidence Livingstone and Manny were arrested or imprisoned. Livingstone and Manny do not respond, but the record demonstrates the police officers are not entitled to judgment on Counts III and IX. A person is considered under arrest when a reasonable person would not have believed he was free to leave. *DeLuna v. City of Rockford, Ill.*, 447 F.3d 1008, 1014 (7th Cir. 2006). Livingstone testified her front door was broken down after she heard loud yelling, police officers entered her house and searched for about two hours, and she did not feel free to leave. Carole Livingstone Dep. Tr. at 25-26, 57, 148. The police officers dispute this testimony, but the conflict may not be resolved on summary judgment. Viewing the evidence in Livingstone and Manny's favor, genuine issues of material

14

fact preclude summary judgment on the false arrest and imprisonment claims in Counts III (§ 1983 unlawful detention and false arrest) and IX (false imprisonment).

The police officers contend they are entitled to summary judgment on the unlawful detention claims in Counts III and IX because they were authorized to detain people in the house while executing the search warrant. *Muehler v. Mena*, 544 U.S. 93, 98 (2005); 725 ILCS 5/108-9. The argument assumes the validity of the warrant. There are genuine issues of material fact regarding Pearce's identity of Livingstone and Manny's house as the location where Cantu sold drugs, and whether Pearce was coerced into attesting to the search warrant's accuracy. The police officers are not entitled to summary judgment on the unlawful detention claims in Counts III (§ 1983 unlawful detention and false arrest) and IX (false imprisonment).

The police officers assert qualified immunity on the unlawful detention claims in Counts III and IX. Livingstone and Manny had a clearly established right to be free from a search unsupported by probable cause. *Jones v. Wilhelm*, 425 F.3d 455, 461 (7th Cir. 2005). Genuine issues of material fact regarding the circumstances and the reliability of information underlying issuance of the search warrant preclude summary judgment on the qualified immunity claim.

**B.     Section 1983 Unlawful Seizure of Property (Count V)**

The police officers argue they are entitled to summary judgment on Count V for unlawful seizure of property because they did not seize any of Livingstone and Manny's property. Livingstone and Manny do not respond. A property seizure occurs when there is an interference with possessory interests in property. *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992). Livingstone and Manny fail to present, and the record does not demonstrate, any genuine issues

15

of material fact that the police officers interfered with their property interests. The police officers are entitled to summary judgment on Count V for unlawful seizure of property.

## IV. Section 1983 Conspiracy (Count IV)

The police officers argue they are entitled to summary judgment on the § 1983 conspiracy claim because there is no evidence they entered into an agreement to deprive plaintiffs of their constitutional rights. To establish a conspiracy under § 1983, plaintiffs must provide evidence the police officers agreed to deprive them of their constitutional rights, or engaged in concerted acts sufficient to raise a reasonable inference of mutual understanding among defendants, and that plaintiffs actually suffered a deprivation as a result of an overt act taken in furtherance of the conspiracy. *Walker v. Thompson*, 288 F.3d 1005, 1008 (7th Cir. 2002); *Admunsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000); *Swanigan v. Trotter*, No. 07 C 4749, 2009 WL 2409431, at *13 (N.D. Ill. Aug. 4, 2009) (Kendall, J.).

Livingstone and Manny do not respond. Plaintiffs submit evidence the police officers detained Pearce for 30 hours, coerced Pearce into attesting to false information regarding the location where Cantu sold marijuana, arrested him for perjury after the search warrant was unproductive, and threatened him with future arrest. Thiry unwittingly told Pearce's attorney "we're going to get him." Nalley Dep. Tr. at 31-32, 63-64. Detective Livingstone testified a sergeant involved in the search offered him an envelope of money two days after execution of the search warrant. Detective Livingstone Dep. Tr. at 85, 91-93. Viewing the evidence in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor, the record reflects genuine issues of material fact regarding concerted actions sufficient to raise a reasonable inference of a mutual understanding among the police officers to deprive plaintiffs of their fourth

16

amendment rights. The police officers are not entitled to summary judgment on Count IV for conspiracy under § 1983.

V.     IIED (Count VI)

The police officers contend they are entitled to summary judgment on the IIED claim because plaintiffs present no evidence of extreme and outrageous conduct or that they suffered emotional distress. Plaintiffs must show: (1) the police officers' conduct was extreme and outrageous; (2) they intended to inflict severe emotional distress, or knew there was a high probability the conduct would cause severe emotional distress; and (3) the conduct caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Pearce does not respond. Genuine issues of material fact regarding the existence of reasonable suspicion to stop Pearce or probable cause to arrest him, and the police officers' knowledge of the incorrect address in the search warrant, suggest extreme and outrageous conduct. But the record reflects no evidence that Pearce suffered severe emotional distress. Livingstone and Manny submit evidence they were treated that night at the hospital: Livingstone for high blood pressure and a headache; Manny for chest pain and a broken portacath in her chest. Defs. Facts ¶¶ 63-64. The record is disputed regarding the connection between these conditions and the police officers' conduct. Viewing the evidence in the light most favorable to Livingstone and Manny, and drawing all reasonable inferences in their favor, there are genuine issues of material fact regarding their severe emotional distress. The police officers are entitled to summary judgment on Pearce's IIED claim, but not on Livingstone and Manny's IIED claim (Count VI).

## CONCLUSION

The police officers' motion for partial summary judgment is granted in part. Summary judgment is not warranted on Pearce's unlawful detention claims in Counts I (§ 1983 unlawful detention and false arrest – reckless conduct) and VII (false imprisonment – reckless conduct) because there are genuine issues of material fact regarding the police officers' reasonable suspicion to stop Pearce under *Terry v. Ohio*. Pozulp and Brown are entitled to summary judgment on Counts II (§ 1983 unlawful detention and false arrest – perjury) and VIII (false imprisonment – perjury) because it is undisputed they did not participate in Pearce's perjury arrest. Thiry is not entitled to summary judgment on Counts II and VIII because there are genuine issues of material fact regarding probable cause to arrest Pearce for perjury.

The police officers are not entitled to summary judgment on Counts III (§ 1983 unlawful detention and false arrest) and IX (false imprisonment) because there are genuine issues of material fact regarding Livingstone and Manny's arrest and the validity of the search warrant. Summary judgment is appropriate on Count V for unlawful seizure of property because Livingstone and Manny fail to present evidence the police officers seized their property.

The police officers are not entitled to summary judgment on Count IV for conspiracy under § 1983 because the record reflects genuine issues of material fact regarding a mutual understanding among the police officers to deprive plaintiffs of their fourth amendment rights. Summary judgment is warranted on Pearce's IIED claim (Count VI) because he fails to present evidence of severe emotional distress. The police officers are not entitled to summary judgment on Livingstone and Manny's IIED claim (Count VI) due to genuine issues of material fact

regarding the police officers' knowledge of the incorrect address in the search warrant and whether Livingstone and Manny suffered severe emotional distress.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

October 1, 2009